48 P.3d 301 (2002)
146 Wash.2d 540
STATE of Washington, Respondent,
v.
Karl Alan SCHULTZ, Petitioner.
No. 71221-2.
Supreme Court of Washington, En Banc.
Argued October 30, 2001.
Decided June 20, 2002.
Nielsen, Broman & Assoc., Eric Broman, Seattle, for Petitioner.
James Krider, Snohomish County Prosecutor, Seth Fine, Deputy, Everett, for Respondent.
OWENS, J.
At issue in this case is the postconviction validity of a no-contact order entered at arraignment and extended at sentencing in a domestic violence prosecution. Defendant Karl Alan Schultz contends that, because RCW 10.99.050(1) provides for entry of a postconviction no-contact order, the no-contact order entered at arraignment pursuant to RCW 10.99.040(3) was invalid upon his conviction for domestic violence assault, despite the trial judge's notation at sentencing that the no-contact order was to remain in effect. The Court of Appeals rejected Schultz's argument and affirmed his conviction for nonfelony violation of a no-contact order. We affirm the Court of Appeals and hold that, under the plain language of the statutory scheme, a no-contact order entered at arraignment under RCW 10.99.040(3) remains in effect after a finding of guilt and until the defendant's sentencing, when the court may extend it as a sentencing condition by indicating on the judgment and sentence that the order is to remain in effect.

FACTS
On January 22, 1999, Schultz was charged in Everett Municipal Court with assault stemming from a domestic violence incident. At his arraignment on February 2, 1999, the court entered a no-contact order, forbidding Schultz to have any contact with Ermita T. Sucaldito for a period of one year. The order is entitled, "No Contact Order," and it states that it was entered "pursuant to RCW 10.99.040, RCW 10.99.050, EMC 10.22.010 and EMC 10.22.020." Ex. 1. On April 27, 1999, Schultz was found guilty of the assault. On the "Finding and Sentence," the trial judge checked item 17, "No Contact Order to remain in effect." Ex. 6.
Schultz resumed living with Sucaldito in June 1999, although both were aware that the no-contact order remained in effect. On August 10, 1999, the Everett Police Department received a 911 hang up call from the apartment that Schultz and Sucaldito shared. In a signed Everett Police Department Witness Statement, Sucaldito stated that the two *302 had been fighting, that she had screamed for help and had tried to call 911, and that Schultz had covered her mouth, pushed her, and pulled the phone from the wall. On August 13, 1999, the State charged Schultz with "Violation of Domestic Violence No-Contact Order (pre-conviction), ... proscribed by RCW 10.99.040, a felony." Clerk's Papers (CP) at 45.
At trial in November 1999, the court granted Schultz's motion to exclude evidence of the prior domestic violence assault conviction. The State introduced the February 2, 1999, no-contact order. After the State rested its case, Schultz moved to dismiss, contending that the no-contact order had expired upon Schultz's conviction. The State then sought to reopen its case to introduce the previously excluded finding and sentence, since that document contained the provision extending the no-contact order. The court asked Schultz if he intended to argue to the jury that the no-contact order had been invalidated by the subsequent conviction, and counsel said he had not planned to do so. The court then admitted the finding and sentence, ruling that the evidence would not go to the jury but would be necessary to complete the appellate record. The court having denied Schultz's motion to dismiss, the jury found Schultz guilty of the lesser included nonfelony offense of "Violation of No Contact Order." CP at 9.
Schultz appealed. The Court of Appeals affirmed in an unpublished per curiam decision but thereafter granted the State's motion to publish. See State v. Schultz, 106 Wash.App. 328, 25 P.3d 436 (2001). This court thereafter granted Schultz's petition for review.

ISSUE
At sentencing in a domestic violence case, may the trial court extend as a sentencing condition a no-contact order entered pursuant to RCW 10.99.040(3) at arraignment, or does RCW 10.99.050(1) require the court to issue an entirely new no-contact order when the court decides to restrict the defendant's contact with the victim as a sentencing condition?

ANALYSIS
Schultz contends that the pretrial no-contact order was a nullity upon his conviction. He argues that the no-contact order was entered under RCW 10.99.040(3) and that only a no-contact order entered pursuant to RCW 10.99.050(1) could have been binding on him after his conviction. The validity of a pretrial no-contact order extended at sentencing is a question of law regarding statutory meaning. This court's review is de novo. State v. Ammons, 136 Wash.2d 453, 456, 963 P.2d 812 (1998).
By statute, trial courts are authorized to enter no-contact orders at various stages in a domestic violence prosecution. First, RCW 10.99.040(2) empowers the trial court to enter a no-contact order upon releasing, "before arraignment or trial," a person charged with or arrested for domestic violence.[1] Second, RCW 10.99.040(3) provides that "[a]t the time of arraignment the court shall determine whether a no-contact order shall be issued or extended." And third, "[w]hen a defendant is found guilty of a crime and a condition of the sentence restricts the defendant's ability to have contact with the victim," RCW 10.99.050(1) requires the "record[ing]" of "such condition." Thus, the scheme gives a trial court the authority to enter a no-contact order at every possible juncture in the prosecution. Under RCW 10.99.040(2) and (3), an order may be issued upon the defendant's release prior to arraignment, it may be extended or initially entered at arraignment, or (where the defendant is released after arraignment) it may be issued after arraignment and prior to trial. Further, under RCW 10.99.050(1), even if the court has entered no prior order under RCW 10.99.040(2) or (3), it must do so at sentencing if the defendant's contact with the victim is to be restricted as a sentencing condition.
The no-contact order at issue in this case was entered at arraignment, as permitted *303 in RCW 10.99.040(3). At the time of the issuance of that order, former RCW 10.99.040(3) did "not expressly state the maximum duration of this type of order." State v. Anaya, 95 Wash.App. 751, 754, 976 P.2d 1251 (1999). In Anaya, the only prior case addressing the duration of an order entered at arraignment, the Court of Appeals considered whether "violation of a no-contact order that was entered at arraignment in a domestic violence case [could] serve as a basis for criminal prosecution after the dismissal of that case[.]" Id. at 752-53, 976 P.2d 1251 (emphasis added). Looking closely at the statutory provisions, the Anaya court determined that "the language ... indicate[d] that the order [was] dependent on the criminal charge." Id. at 757, 976 P.2d 1251. Concluding that "[t]he Legislature ha[d] not criminalized the violation of such an order after dismissal of the underlying charge," the Anaya court "h[e]ld that the no-contact order entered at arraignment against Anaya expired upon the dismissal of the underlying domestic violence charge." Id. at 760, 976 P.2d 1251 (emphasis added). In an amendment subsequent to the Anaya decision, the Legislature added to RCW 10.99.040(3) the qualification that "[t]he no-contact order shall terminate if the defendant is acquitted or the charges are dismissed." Laws of 2000, ch. 119, § 18 (emphasis added).
We reject Schultz's assertion that the Anaya decision and the statutory scheme "support the conclusion that preconviction no-contact orders do not survive dismissal, acquittal, or a finding of guilt." Pet. at 7. While the Anaya decision and the amended statute plainly provide that dismissal or acquittal terminates a pretrial domestic violence no-contact order, neither Anaya nor the new statutory language addresses the precise question presented in this case: that is, whether a no-contact order entered at arraignment survives a finding of guilt and may be extended as a sentencing condition. The Anaya court's determination that certain statutory language "indicate[d] that the order [was] dependent on the criminal charge" is not inconsistent with the conclusion that the order survives a finding of guilt on the charge. That the amendment to RCW 10.99.040(3) specified that dismissal or acquittal would terminate the pretrial no-contact order likewise supports the State's position here that the Legislature never intended an order entered at arraignment to terminate automatically upon a finding of guilt. Indeed, to adopt Schultz's interpretation of former RCW 10.99.040(3), we would have to ignore the implications of the Legislature's post-Anaya amendment and, in effect, write into the former statute the qualification that the no-contact order would also terminate upon a finding of guilt. See Anaya, 95 Wash. App. at 756, 976 P.2d 1251 (citing In re Custody of Smith, 137 Wash.2d 1, 12, 969 P.2d 21 (1998) (stating that the court "will not read qualifications into the statute which are not there")). We decline to introduce into RCW 10.99.040(3) the requested qualification that such an order "do[es] not survive... a finding of guilt." Pet. at 7. Not only does that qualification not appear in the statute, it could leave a victim unprotected, should there be any delay between a finding of guilt and the released defendant's subsequent sentencing; such a circumstance would be contrary to the statutory aim of "assur[ing] the victim of domestic violence the maximum protection from abuse which the law and those who enforce the law can provide." RCW 10.99.010.
Schultz also maintains that nullification of the pretrial no-contact order is necessitated simply by the existence of RCW 10.99.050(1). However, just as RCW 10.99.040(3) does not provide that a no-contact order entered at arraignment terminates upon a finding of guilt, RCW 10.99.050(1) does not say that, where the trial court restricts as a sentencing condition the defendant's contact with the victim, the court ipso facto nullifies the prior no-contact order and must then enter an entirely new order. Because RCW 10.99.050(1) requires only that the sentencing condition be "recorded" and that the victim be provided with a certified copy of the order, we cannot adopt Schultz's more restrictive view that only a newly drafted order would satisfy RCW 10.99.050(1). See State v. Azpitarte, 140 Wash.2d 138, 141, 995 P.2d 311 (2000) (observing that where a statutory provision is "clear and unambiguous, its meaning is to be derived from the *304 language of the statute alone and it is not subject to judicial construction").[2] We therefore conclude that, where the trial court determines at sentencing that a defendant's contact with the victim is to be restricted, RCW 10.99.050(1) may be satisfied either by entry of a new no-contact order or by the court's affirmative indication on the judgment and sentence that the previously entered no-contact order is to remain in effect.
To infer, as Schultz has done, that a trial court may satisfy RCW 10.99.050(1) only by physically executing a completely new order is especially unreasonable in light of the order entered at his arraignment. That order is not designated a pretrial or preconviction no-contact order, but simply bears the title "NO-CONTACT ORDER." Ex. 1. Moreover, the order provides that the defendant's contact with the victim was restricted pursuant not only to RCW 10.99.040 but also to "RCW 10.99.050, EMC 10.22.010 and EMC 10.22.020." Ex. 1 (emphasis added). Additionally, by bearing the legend prescribed in RCW 10.99.040(4)(d), the order simultaneously satisfies the legend requirement of former RCW 10.99.050(2),[3] which is nothing more than the first sentence, verbatim, from the 10.99.040 legend. In sum, by advancing a narrow interpretation of RCW 10.99.050(1), Schultz seeks to invalidate a no-contact order that he knew to be in effect and that could have differed from a newly issued order in no meaningful or prejudicial way.
We conclude that the trial court satisfied the two requirements of RCW 10.99.050(1) recording of the sentencing condition and notification of the victimby affirmatively extending the order entered under RCW 10.99.040(3). By placing an X in the space alongside item 17, "No Contact Order to remain in effect," the trial judge recorded on the finding and sentence the elected sentencing condition; that condition remained fully recorded in the preexisting no-contact order, a certified copy of which had already been given to the victim. Ex. 6; see also Ex. 1. In this case the State could have properly charged Schultz with violation of the order entered under RCW 10.99.040(3) or .050(1).

CONCLUSION
A no-contact order entered at arraignment under RCW 10.99.040(3) does not expire upon a finding of guilt in a domestic violence prosecution but remains in effect until the defendant's sentencing. As a sentencing condition, pursuant to RCW 10.99.050(1), the trial court may issue a new no-contact order, or it may extend the existing order by clearly indicating on the judgment and sentence that the order is to remain in effect. The no-contact order entered under RCW 10.99.040(3) at Schultz's arraignment was permissibly extended as a sentencing condition and thus remained in effect until its stated expiration date. The Court of Appeals properly affirmed Schultz's conviction for violating a validly entered domestic violence no-contact order. We affirm the Court of Appeals.
MADSEN, IRELAND, BRIDGE, and CHAMBERS, JJ., concur.
SANDERS, J. (dissenting).
The expedient and convenient theory of the majority opinion fails to explain the existence of two separate statutes authorizing the issuance of two distinct forms of no-contact orders. RCW 10.99.040 grants authority to issue a no-contact order as a condition of pretrial release pending resolution of the underlying domestic violence action. RCW 10.99.050 authorizes the issuance of a no-contact order as a condition of sentencing upon the defendant's conviction. Neither statute authorizes a court to extend a pretrial no-contact order beyond the pretrial stage. If a court desires to include in the *305 conditions that the defendant have no contact with the victim, it must do so by issuing a no-contact order in accordance with RCW 10.99.050.
When Schultz's domestic violence action concluded with his conviction for assault, any authority to issue or enforce an order under RCW 10.99.040 ended. Although the court could have reissued a no-contact order under RCW 10.99.050 it did not. There was therefore no valid order upon which to base Schultz's conviction.

ANALYSIS
The facts of this case are essentially undisputed and adequately presented by the majority, but a few deserve repetition and enhancement. It is important to note that even though Schultz's alleged violation occurred well after his trial concluded, he was not charged with violating a postconviction order issued pursuant to RCW 10.99.050. The State's information charged Schultz with violating a pretrial no-contact order issued pursuant to RCW 10.99.040:

VIOLATION OF DOMESTIC VIOLENCE NO-CONTACT ORDER (pre-conviction), committed as follows: That the defendant, on or about the 10th day of August, 1999, did wilfully violate the provisions of said order prohibiting defendant from having any contact with Ermita Sucaldito, to-wit: the defendant intentionally did assault Ermita Sucaldito, a human being; proscribed by RCW 10.99.040, a felony.
Clerk's Papers at 45.
The only no-contact order issued in Schultz's case was issued at the pretrial stage on February 2, 1999 pursuant to RCW 10.99.040. State's Ex. 1. At the conclusion of Schultz's trial, the court purported to "extend" this pretrial order by placing a checkmark on its finding and sentence indicating the order was "to remain in effect." State's Ex. 6. But the State does not argue this checkmark somehow transformed the pretrial order into a postconviction order. Thus, the validity of Schultz's conviction for violating a no-contact order turns on whether an order issued at the pretrial stage of a domestic violence proceeding pursuant to RCW 10.99.040 remains in effect even though the pretrial stage comes to an end by virtue of the commencement and conclusion of the trial. I conclude it does not.

I

NO CONTACT ORDERS ISSUED UNDER RCW 10.99.040 ARE CONDITIONS OF PRETRIAL RELEASE
Chapter 10.99 RCW, which governs domestic violence, authorizes the issuance of two distinct forms of no-contact orders in a domestic violence action. RCW 10.99.040, in conjunction with RCW 10.99.045, authorizes courts to issue pretrial no-contact orders as a condition of pretrial release pending trial. If the trial results in a conviction, RCW 10.99.050 authorizes the sentencing court to issue a postconviction no-contact order as a condition of sentencing. Although there are similarities in the form and content of pretrial and postconviction orders, they are of a very different nature. The former is a condition of pretrial release pending trial, while the latter is a condition of the defendant's sentence following conviction. This distinction must be accounted for to determine whether it is possible, as a matter of law, to violate a pretrial no-contact order after trial has concluded. The majority fails to even consider this; rather, its entire reasoning is premised on its mistaken assumption a no-contact order is a no-contact order regardless of how, when, or why it was issued.
That a no-contact order is a condition of pretrial release is evident from a brief discussion of the nature of pretrial release as well as the plain language of RCW 10.99.040. Pretrial release is the release of a defendant from the State's custody pending trial. 12 Royce A. Ferguson, Jr., Washington Practice: Criminal Practice and Procedure § 401 (1997). The two fundamental purposes of pretrial release are to honor the presumption of innocence until guilt is proved, while at the same time keeping the defendant in the State's constructive custody so as to assure his or her attendance before the court when required. See id. The defendant is entitled to be released on personal recognizance unless the court determines such will not "reasonably assure the accused's appearance" *306 when needed, or "there is shown a likely danger" the accused will commit a violent crime or interfere with the proper course of justice. CrR 3.2(a); CrRLJ 3.2(a).[1] Personal recognizance is essentially the release of a defendant from custody based solely on his or her promise to appear before the court when required. 12 Ferguson, Jr., supra, § 401. If the court determines such a promise is insufficient in and of itself to assure the defendant's appearance, the court may impose various conditions on pretrial release, including a no-contact order:
(c) Conditions of Release. Upon a showing that there exists a substantial danger that the accused will commit a violent crime or that the accused will seek to intimidate witnesses, or otherwise unlawfully interfere with the administration of justice, the court may impose one or more of the following conditions:

(1) Prohibit the accused from approaching or communicating in any manner with particular persons or classes of persons;
(2) Prohibit the accused from going to certain geographical areas or premises;
(3) Prohibit the accused from possessing any dangerous weapons or firearms, or engaging in certain described activities or possessing or consuming any intoxicating liquors or drugs not prescribed to the accused;
(4) Require the accused to report regularly to and remain under the supervision of an officer of the court or other person or agency;
(5) Prohibit the accused from committing any violations of criminal law;
(6) Require the accused to post a secured or unsecured bond, conditioned on compliance with all conditions of release. This condition may be imposed only if no less restrictive condition or combination of conditions would reasonably assure the safety of the community or the appearance of the defendant.
CrR 3.2(c) (emphasis added); see also CrRLJ 3.2(c).
The same general structure applies in a domestic violence case. But while no-contact orders are given no obvious preference over other forms of conditions in a general criminal case, see CrR 3.2(c); CrRLJ 3.2(c), no-contact orders are brought to the forefront under chapter 10.99 RCW. The Legislature has recognized the special circumstances with respect to victims' particular vulnerability in domestic violence cases:
Because of the likelihood of repeated violence directed at those who have been victims of domestic violence in the past, when any person charged with or arrested for a crime involving domestic violence is released from custody before arraignment or trial on bail or personal recognizance, the court authorizing the release may prohibit that person from having any contact with the victim.
Former RCW 10.99.040(2) (1997). Therefore, before a court releases a domestic-violence defendant from custody pending trial it must determine whether to impose a no-contact order as one of the conditions of pretrial release. See RCW 10.99.040(3) (1997) ("At the time of arraignment the court shall determine whether a no-contact order shall be issued or extended." (emphasis added)); RCW 10.99.045(3) (1998) ("At the time of [the defendant's personal appearance or arraignment], the court shall determine the necessity of imposing a no-contact order or other conditions of pretrial release according to the procedures established by court rule for a preliminary appearance or an arraignment." (emphasis added)). Therein lies one of the differences between a domestic violence case and a criminal case in general. Chapter 10.99 requires a court to consider the necessity of a pretrial no-contact order in every domestic violence action. RCW 10.99.040(3) (1997), .045(3) (1998). In criminal cases in general, however, courts need not consider the need for a pretrial no-contact order unless the State has demonstrated a "substantial danger" the accused will commit a crime of violence, intimidate a *307 witness, or otherwise interfere with the administration of justice. CrR 3.2(c); CrRLJ 3.2(c).
This difference notwithstanding, whether issued pursuant to chapter 10.99 or CrR 3.2(c), a pretrial no-contact order is a condition of pretrial release. The order is evidence the defendant's release from custody is conditioned on the defendant's having no contact with the alleged victim while the underlying charge is pending. That is an entirely different situation from a no-contact order issued as a condition of sentencing after the trial on the underlying charge has concluded. After trial pretrial release becomes a nonissueas do any conditions imposed on pretrial release.
The plain language of the relevant statutes in chapter 10.99 also reveals a no-contact order issued pursuant to RCW 10.99.040 is a condition of pretrial release. RCW 10.99.045(3) (1998) requires a court to "determine the necessity of imposing a no-contact order or other conditions of pretrial release." Likewise, RCW 10.99.040(3) (1997) authorizes a court to issue or extend a no-contact order and "may also include in the conditions of release a requirement that the defendant submit to electronic monitoring." The Court of Appeals made the parallel point in State v. Anaya, 95 Wash.App. 751, 976 P.2d 1251 (1999):
The express reference in the statute to "other conditions of pretrial release" clearly indicates an intent by the Legislature to limit the term of no-contact orders issued at arraignment to the period between entry of the order and trial. To read the above language in any other way would require that we ignore the words "other conditions of pretrial release" as a group within which a no-contact order falls.
Id. at 756, 976 P.2d 1251.
The actual holding in Anaya seems primarily concerned with the effect of dismissal on a pretrial no-contact order, but the court's reasoning on the temporal limit of orders entered at arraignment applies to any no-contact order entered as a condition of pretrial release. Anaya did not reverse the defendant's sentence merely because the charge to which the no-contact order was related was dismissed. It reversed because when the underlying charge was dismissed there was no legislative authority upon which to base the pretrial no-contact order:
It follows that if a case is dismissed and there is no trial, there is no express legislative authority for the continued validity of the no-contact order.
Id. at 756, 976 P.2d 1251. In other words, Anaya stands for the proposition that conclusion of the underlying criminal proceeding terminates the authority to issue or enforce a no-contact order pursuant to former RCW 10.99.040.
I agree with this proposition. As a condition of pretrial release, a pretrial no-contact order is of a temporary nature. It is valid only as long as the defendant is on pretrial release pending resolution of the underlying criminal action. People v. Bleau, 718 N.Y.S.2d 453, 454, 276 A.D.2d 131 (2001). Once the defendant is convicted or acquitted, or the action is dismissed, the criminal action is no longer pending and pretrial release, together with any conditions thereon, becomes a nullity. Id. Thus, when a domestic violence action concludes, any no-contact order issued as a condition of pretrial release expires by operation of statute. See RCW 10.99.040 (1997), .045 (1998).

II

NO-CONTACT ORDERS ISSUED UNDER RCW 10.99.050 REQUIRE CONVICTION TO BE VALID
As indicated above, a court presiding over a domestic violence action may, in addition to issuing a no-contact order in the pretrial stage, also issue a separate order if the defendant is convicted as charged. See supra at 305. Such postconviction orders are valid only if (1) the defendant was found guilty; (2) the order is issued in writing; (3) the written order contains the court's directives; (4) the order bears the appropriate legend; (5) the order is recorded; and (6) a written certified copy is provided to the victim. RCW 10.99.050 (1997).
The court presiding over Schultz's domestic violence action could have issued a no-contact *308 order pursuant to this statute following his conviction for assault. It did not, however. Instead the court merely placed a checkmark on its finding and sentence indicating the "No Contact Order [was] to remain in effect." State's Ex. 6.
Such is not in compliance with the plain language of RCW 10.99.050. The statute authorizes the court to issue a no-contact order as a condition of sentence:
(1) When a defendant is found guilty of a crime and a condition of the sentence restricts the defendant's ability to have contact with the victim, such condition shall be recorded and a written certified copy of that order shall be provided to the victim.
(2) Willful violation of a court order issued under this section is a gross misdemeanor....
RCW 10.99.050(1) (1997) (emphasis added). Nowhere in the plain language of this provision is found the authority to extend any conditions which may have been imposed on pretrial release. Further, the court's finding and sentence lacks the legend required by RCW 10.99.050 to be included in every no-contact order issued as a condition of sentencing:
Violation of this order is a criminal offense under chapter 10.99 RCW and will subject a violator to arrest; any assault, drive-by shooting, or reckless endangerment that is a violation of this order is a felony.
RCW 10.99.050(2) (1997). Instead, the finding and sentence merely presents the following ambiguous and wholly inadequate notation toward the bottom: "If you violate any conditions, you will be required to return to court." State's Ex. 6.
The majority excuses this failure to comply with RCW 10.99.050 based on the title of the February 2, 1999 no-contact order:
It is hereby ordered that, pursuant to RCW 10.99.040, RCW 10.99.050, EMC 10.22.010 and EMC 10.22.020 the defendant shall have no contact, directly or indirectly, in person, in writing or by telephone, personally or through any other person with Ermita T. Sucaldito wherever he/she may be, and particularly at 3531 Short St.
State's Ex. 1. Without any meaningful analysis the majority suggests this means, "the defendant's contact with the victim was restricted pursuant not only to RCW 10.99.040 but also to `RCW 10.99.050.'" Majority at 304 (quoting State's Ex. 1). Therefore, the majority conjectures, the State could have charged Schultz under either RCW 10.99.040 or RCW 10.99.050. Majority at 304.
Simply put, the majority is wrong. Regardless of how an order is entitled or on what authority it purports to be issued, RCW 10.99.050 authorizes the issuance of a no-contact order only after the defendant has been found guilty. The order of which Schultz was convicted of violating was issued almost three months before Schultz was convicted for the assault charge to which it was related. State's Ex. 1; State's Ex. 6. That order was not authorized pursuant to RCW 10.99.050.
An independent no-contact order postconviction is necessary to remove any doubts about what conduct is prohibited, what is permitted, and what consequences may follow from an alleged violation. See RCW 10.99.050 (1997). In this case, Schultz was presented with a pretrial no-contact order, purportedly still in effect, informing him as follows:
Violation of this order is a criminal offense under Chapter 10.99 RCW and will subject a violator to arrest; Any assault, drive-by shooting, or reckless endangerment that is a violation of the order is a felony. You can be arrested even if any person protected by the order invites or allows you to violate the order's prohibitions. You have the sole responsibility to avoid or refrain from violating the order's provisions. Only the court can change the order.
State's Ex. 1. Yet, the finding and sentence merely warns Schultz that he may be "required to return to court" should he allegedly violate any of the conditions imposed on his sentence. State's Ex. 6. Until today's majority opinion, how could Schultz have known that the phrase, "If you violate any conditions [of your sentence], you will be required to return to court" in his finding and sentence *309 actually meant all that is quoted above from the pretrial order? State's Ex. 6; State's Ex. 1. Cf. State v. Keller, 35 Wash. App. 455, 461, 667 P.2d 139 (1983) (holding the court erred when it failed to explicitly indicate which probation conditions would also become conditions of release pending appeal).

III

COURTS HAVE NO STATUTORY AUTHORITY IN CHAPTER 10.99 RCW TO EXTEND A PRETRIAL NO CONTACT ORDER BEYOND TRIAL
Chapter 10.99 does not support the majority's claim that courts are authorized to extend a pretrial no-contact order issued pursuant to RCW 10.99.040 "as a sentencing condition by indicating on the judgment and sentence that the order is to remain in effect." Majority at 301. The majority seems to have accepted the State's facially appealing, but substantively empty, argument that pretrial no-contact orders must be allowed to carry over to the postconviction stage so as to compensate for administrative oversight. According to the State, "automatic termination of the existing order creates grave danger that the protection will vanish as a result of oversight, if the court fails to enter a new order." Suppl. Br. of Resp't at 4. The majority opines along the same lines. According to the majority, following the plain language of the relevant statutes
could leave a victim unprotected, should there be any delay between a finding of guilt and the released defendant's subsequent sentencing; such a circumstance would be contrary to the statutory aim of "assur[ing] the victim of domestic violence the maximum protection from abuse which the law and those who enforce the law can provide."
Majority at 303 (quoting RCW 10.99.010).
Automatic carry-over of a pretrial no-contact order to compensate for administrative inertia or incompetence is neither in line with the purpose of chapter 10.99 nor applicable to policy concerns. The noble and worthwhile purpose of chapter 10.99 is to "recognize the importance of domestic violence as a serious crime against society and to assure the victim of domestic violence the maximum protection from abuse which the law and those who enforce the law can provide." RCW 10.99.010. The majority claims its holdingthat a checkmark on a finding and sentence is enough to transform a condition of pretrial release into a condition of sentenceis in line with that purpose. Majority at 304. The opposite is true.
The primary purpose of a no-contact order is not to punish the defendant for future violations of that order; it is to protect the victim from once again being victimized by a future act of domestic violence. The majority's resolution of the instant proceeding will do precious little to prevent future harm to victims of domestic violence. Victims of domestic violence are better protected from further harm if their potential assailants are adequately forewarned not to initiate contact, and informed of the consequences of doing so. The majority's approach will certainly punish those who violate a pretrial no-contact order extended to the postconviction stage, but that punishment will necessarily occur after the violationi.e., after the harm has been inflicted. If future acts of domestic violence are to be avoided, the better approach is to deter such acts before they take place.
Consequently, maximum protection in line with the mandate of chapter 10.99 is provided by requiring courts to explicitly delineate what conduct is prohibited as well as the consequences of engaging in such prohibited conduct. Such explicit instructions are not provided by a simple checkmark. They would, however, be provided by enforcing the duties imposed by RCW 10.99.050 and requiring courts to, when necessary, issue a no-contact order with explicit instructions to the defendant so as to protect the victim from future harm. The majority's extension-by-checkmark approach is certainly administratively convenient, but statutory requirements do not take a backseat to administrative expediency and are certainly not expendable to compensate for administrative "oversight." Suppl. Br. of Resp't at 4; see supra at 309.
Furthermore, "maximum protection from abuse which the law ... can provide," means maximum protection within the bounds of the *310 law. RCW 10.99.010. Policy is no justification for reading provisions into a statute that are not there. In re Custody of Smith, 137 Wash.2d 1, 12, 969 P.2d 21 (1998). Yet, that is what the majority does when it claims the requirements of RCW 10.99.050 may be satisfied by "affirmatively extending" a pretrial no-contact order. Majority at 304; see also majority at 301, 303, 304 n. 3.
The language of RCW 10.99.050(1) authorizing the issuance of no-contact orders following conviction is clear and unambiguous, wherefore its meaning is to be derived from that language alone. State v. Azpitarte, 140 Wash.2d 138, 141, 995 P.2d 31 (2000). RCW 10.99.050 contains no language indicating courts are authorized to extend, existing no-contact orders. See supra at 308 (establishing RCW 10.99.050 merely authorizes courts to issue orders). In contrast, RCW 10.99.040 contains such language: "At the time of arraignment the court shall determine whether a no-contact order shall be issued or extended." RCW 10.99.040(3) (1997) (emphasis added). Thus, if the Legislature had intended existing orders could be extended to also serve as sentencing conditions, it could have indicated such intent by including the appropriate language. But it did not, and it is not our function to judicially rewrite the Legislature's enactments. Cf. Anaya, 95 Wash.App. at 760, 976 P.2d 1251 ("strongly stated policy does not justify our reading into this criminal statute provisions that are not there").
We must enforce the statutes as written, not as we think they should have been written. By the plain language of the relevant statutes of chapter 10.99, courts are not authorized to extend pretrial no-contact orders beyond trial. If a court presiding over a domestic violence action wishes to condition a defendant's sentence on having no contact with the victim, such must be carried out by issuing a no-contact order in accordance with RCW 10.99.050.

IV

SCHULTZ'S CONVICTION MUST BE OVERTURNED BECAUSE IT IS NOT SUPPORTED BY SUFFICIENT EVIDENCE
This proceeding comes before us to review Schultz's conviction for violating a no-contact order. An implied element in every such charge is the validity of the order allegedly violated. See Dawson v. Dawson, 71 Wash.2d 66, 68, 426 P.2d 614 (1967). Here the State was therefore required to present at least one valid order to justify Schultz's conviction but did not. The pretrial no-contact order entered pursuant to RCW 10.99.040 on February 2, 1999 expired upon conclusion of Schultz's assault trial. In addition, we have been presented with no order valid under RCW 10.99.050 because the February 2, 1999 order was issued prior to conviction, and the finding and sentence does not satisfy the requirements of that statute. Since there is no valid order, Schultz's conviction must be reversed for want of sufficient evidence. See State v. Hickman, 135 Wash.2d 97, 106, 954 P.2d 900 (1998).

CONCLUSION
The majority's theory of this case fails to realize that no-contact orders issued pursuant to RCW 10.99.040 are conditions of pretrial release and as such expire as a matter of law upon conclusion of trial. That is why RCW 10.99.050 authorizes, and requires, the issuance of a new order if a sentence is to include no contact with the victim as one of the conditions. No new order was issued in Schultz's case after his assault conviction. Therefore, his conviction based on conduct that occurred well after the conclusion of his domestic violence action must be reversed.
I dissent.
ALEXANDER, C.J., SMITH and JOHNSON, JJ., concur.
NOTES
[1] We refer throughout to the statutes in effect in 1999 when the no-contact order was entered against Schultz, extended at sentencing, and thereafter violated. RCW 10.99.040 and 10.99.050 have since been amended. See Laws of 2000, ch. 119, §§ 18, 20.
[2] Finding no ambiguity in the relevant statutes, we reject Schultz's invocation of the rule of lenity. See In re Post Sentencing Review of Charles, 135 Wash.2d 239, 250 n. 4, 955 P.2d 798 (1998) (stating that "the rule only applies when a penal statute is ambiguous and legislative intent is insufficient to clarify the ambiguity").
[3] Schultz speculates that the State charged him under RCW 10.99.040(3) because the finding and sentence lacked the legend required in RCW 10.99.050(2), see Pet. at 7-8, but the point is not well taken. The finding and sentence was not a postconviction no-contact order; rather it served only to extend the existing order, which did in fact bear the appropriate legend.
[1] CrR 3.2(a) and CrRLJ 3.2(a) apply to noncapital cases, which include domestic violence actions. See RCW 10.99.020(3) (defining "domestic violence" to include a list of crimes, all of a noncapital nature).