

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE APR 2 6 2018

for                 CHIEF JUSTICE

This opinion was filed for record

at 8:00am    on April 26 2018

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Petitioner, | ) | No. 94892-5 |
| v. | ) | |
| | ) | En Banc |
| WENDY GRANATH, | ) | |
| | ) | |
| Respondent. | ) | Filed: APR 2 6 2018 |

YU, J.— The issue in this case is whether the duration of a domestic violence (DV) no-contact order entered by a court of limited jurisdiction is limited to the length of the underlying suspended sentence. The State appeals a published Court of Appeals decision that vacated a no-contact order and held that the district court lacked authority pursuant to RCW 10.99.050 to enter a no-contact order exceeding the duration of the underlying sentence. *State v. Granath*, 200 Wn. App. 26, 401 P.3d 405, *review granted*, 189 Wn.2d 1009, 402 P.3d 823 (2017). We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case are not disputed. A jury convicted Wendy Granath in King County District Court of two gross misdemeanor DV crimes—cyberstalking and violation of a DV no-contact order—based on e-mails she sent to her estranged husband. Clerk's Papers (CP) at 35; Pet. for Review at 2. In November 2012, Granath was sentenced to 364 days in jail with 334 days suspended for 24 months. CP at 35. As a condition of her suspended sentence, she was prohibited from contacting her estranged husband. The court issued a separate no-contact order pursuant to RCW 10.99.050 reflecting the directive not to contact her estranged husband. The judge did not enter an expiration date, and so, by the terms of the pattern form order, it expired by default five years later.

Granath completed her sentence in December 2014. She thereafter moved to vacate the no-contact order on the basis that it ended when she was no longer subject to the underlying no-contact condition of the sentence. The district court denied the motion, stating it "had lawful authority to issue a separate order under [chapter] 10.99 [RCW], which is a stand-alone provision." *Id.* at 22. Granath appealed to the King County Superior Court, which affirmed the district court. Granath then sought discretionary review from the Court of Appeals, which reversed in a published opinion. It held that the district court did not have statutory authority to issue a no-contact order that lasted longer than the defendant's

2

suspended sentence. *Granath*, 200 Wn. App. at 37-38. We granted review.[1] 189 Wn.2d 1009.

## ISSUE

Whether RCW 10.99.050 provides a district court the authority to issue a DV no-contact order that lasts longer than the defendant's suspended sentence?

## ANALYSIS

A.    Overview of a district court's limited sentencing authority

District courts are courts of limited jurisdiction created by the legislature. CONST. art. IV, §§ 1, 12; *Smith v. Whatcom County Dist. Ct.*, 147 Wn.2d 98, 104, 52 P.3d 485 (2002). "The legislature has sole authority to prescribe their jurisdiction and powers." *Smith*, 147 Wn.2d at 104. To understand a district court's authority in this context, we review the relevant statutory grants of authority.

The affirmative grant of subject matter jurisdiction in this case is RCW 3.66.060. It provides a district court jurisdiction that is "[c]oncurrent with

---

[1] At oral argument, Granath asserted that this case is moot because Granath's no-contact order expired in November 2017. Wash. Supreme Court oral argument, *State v. Granath*, No. 94892-5 (Feb. 16, 2018), at 35 min., 51 sec., *audio recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org. However, "we may retain and decide a moot case 'when it can be said that matters of continuing and substantial public interest are involved.'" *State v. Cruz*, 189 Wn.2d 588, 598, 404 P.3d 70 (2017) (quoting *Sorenson v. City of Bellingham*, 80 Wn.2d 547, 558, 496 P.2d 512 (1972)). Here, appellate review is proper because a district court's authority to issue a no-contact order is a matter of continuing and substantial public interest.

the superior court of all misdemeanors and gross misdemeanors committed in their respective counties and of all violations of city ordinances." RCW 3.66.060. The statute also authorizes a district court to impose a fine of $5,000 and a jail sentence of one year. *Id.*

There is a specific legislative provision that extends a district court's jurisdiction over DV offenses for up to five years. RCW 3.66.068(1)(a) states in relevant part:

> (1) A court has continuing jurisdiction and authority to suspend the execution of all or any part of its sentence upon stated terms, including installment payment of fines for a period not to exceed:
> (a) Five years after imposition of sentence for a defendant sentenced for a domestic violence offense . . . .

This statute authorizes a district court to suspend all or part of a DV sentence for up to five years and impose sentencing conditions in its judgment and sentence.[2] If a defendant violates a condition of the sentence, then a district court may revoke the suspended sentence. RCW 3.66.069.

The last statutory grant of authority that is relevant to this case is RCW 10.99.050(1), which authorizes a court to issue a no-contact order to "record[]" a no-contact condition it includes in the judgment and sentence. The statute states,

> When a defendant is found guilty of a crime and a condition of the sentence restricts the defendant's ability to have contact with the victim, such condition shall be *recorded* and a written certified copy

---

[2] The legislature also has provided a district court the authority to defer any or all of a DV sentence for up to five years. RCW 3.66.068(2)(a)(i).

4

of that order shall be provided to the victim.

RCW 10.99.050(1) (emphasis added). This case requires us to determine whether RCW 10.99.050 authorizes a district court to issue a no-contact order that lasts longer than the sentence it imposes. Because resolution of this case requires statutory interpretation, our review is de novo. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007).

B.     The plain language of RCW 10.99.050 resolves the issue presented

We look to the statute's plain language to determine whether it addresses the duration of a no-contact order. Its plain meaning is determined by consulting "the statute in which the provision at issue is found, as well as related statutes or other provisions of the same act in which the provision is found." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 10, 43 P.3d 4 (2002). If the legislature's intent is clear based on the plain language of the statute, "then the court must give effect to that plain meaning as an expression of legislative intent." *Id.* at 9-10.

RCW 10.99.050 is silent on the duration of a no-contact order, and consulting other provisions of the same act does not help us understand the intended time span of the no-contact order. Other orders issued prior to sentencing pursuant to chapter 10.99 RCW have explicit termination provisions and therefore do not help us determine the duration of a postsentencing order. RCW 10.99.040(5) (a prefiling DV no-contact order expires at arraignment or within 72

hours if no charges are filed), (3) (a DV no-contact order entered or extended at arraignment terminates if the defendant is acquitted or the charges are dismissed).[3] The parties agree that the statute is silent on the order's duration, but each interprets the statute's silence differently.

The State takes the position that RCW 10.99.050 "independently authorizes" a district court to issue a DV no-contact order so long as it imposes a no-contact condition of the sentence. Pet. for Review at 9. Other provisions of RCW 10.99.050 refer to no-contact orders as "issued" rather than "recorded," and the State infers use of the word "issued" means the order stands independently of the underlying sentence condition. *See, e.g.*, RCW 10.99.050(2)(a), (3). The State does not cite authority for this conclusion, but proceeds to make a public policy argument that an independently authorized no-contact order can last longer than the defendant's sentence.

The legislature declared its intent that chapter 10.99 RCW provide victims of DV "the maximum protection from abuse." RCW 10.99.010. The State argues that the interpretation that best effectuates the legislature's intent is one that grants

---

[3] In *State v. Shultz*, we held that a no-contact order issued pursuant to RCW 10.99.040(3) can remain in effect until sentencing. 146 Wn.2d 540, 548, 48 P.3d 301 (2002). At sentencing, a trial court may issue a new no-contact order consistent with RCW 10.99.050(1) "or it may extend the existing order by clearly indicating on the judgment and sentence that the order is to remain in effect." *Id.*

a district court the authority to issue a no-contact order for the maximum sentencing term, regardless of the sentence actually imposed. Pet. for Review at 9-10.

The State also looks outside chapter 10.99 RCW for support. Other statutes authorize a court to issue a postconviction order protecting victims of sexual assault and stalking if they are not eligible for a civil DV protection order pursuant to chapter 26.50 RCW. But unlike a postconviction DV no-contact order, the legislature has provided express statutory authority for these orders to last longer than a defendant's sentence. *See* RCW 7.90.150(6)(c) (a sexual assault protection order lasts for two years after the defendant's sentence); RCW 7.92.160(6)(c) (a no-contact stalking order lasts five years regardless of the length of the defendant's sentence). The State argues the legislature did not intend to provide victims of sexual assault and stalking more protection than DV victims and so the legislature must have intended for a DV no-contact order to last longer than a defendant's sentence, despite the statute's silence.

Granath cites the plain language of RCW 10.99.050 to argue that the legislature has not provided a district court independent authority to issue a no-contact order. If a district court includes a condition of the suspended sentence that "restricts the defendant's ability to have contact with the victim," then "such condition shall be *recorded*" as a no-contact order. RCW 10.99.050(1) (emphasis

added). Because a no-contact order is "recording" a condition of the sentence, Granath contends there is no authority for the order to last longer than the condition it records.

The Court of Appeals agreed with Granath and resolved this case on the statute's plain language. It concluded that "[t]he only no-contact order the statute authorizes is one that records a no-contact condition of the sentence. It follows that when the no-contact condition of sentence expires, there is no express legislative authority for the continued validity of the no-contact order." *Granath*, 200 Wn. App. at 36.

We agree with Granath and the Court of Appeals. Although RCW 10.99.050 is silent on the duration of a no-contact order, its length can be determined from the statute's plain language. If a district court suspends a defendant's DV sentence and imposes a "condition of the sentence [that] restricts the defendant's ability to have contact with the victim," then it *"record[s]"* that condition as a no-contact order. RCW 10.99.050(1) (emphasis added). Without additional statutory language indicating otherwise, our inquiry ends here because RCW 10.99.050 is not an independent grant of authority to a district court to issue a no-contact order. The only reason a court is permitted to issue an order of no-contact in this context is to record a condition of the sentence.

It makes sense that a district court both imposes a no-contact condition of the sentence *and* issues a no-contact order with the same duration because it allows the no-contact prohibition to be a separate enforceable condition. A willful violation of a no-contact order is enforceable by *any* court through separate criminal prosecution without revoking the suspended sentence. RCW 10.99.050(2)(a). Tying the length of a no-contact order to the length of the sentence actually imposed ensures that a defendant is not subject to criminal penalties for contacting the victim when the defendant is no longer subject to the sentencing condition that gave rise to the order. This result, as the Court of Appeals noted, "is not absurd." *Granath*, 200 Wn. App. at 38.

Our conclusion *does not* prohibit a district court from issuing a five year no-contact order, which is the longest a district court can retain jurisdiction pursuant to RCW 3.66.068. To impose a five year no-contact order, a district court simply suspends at least a part of the defendant's sentence for five years and imposes a no-contact condition of the sentence for that same period of time.

While we resolve the issue presented based on the statute's plain language, we take the opportunity to distinguish *State v. W.S.*, 176 Wn. App. 231, 309 P.3d 589 (2013), which both parties argue supports their position. In *W.S.*, the Court of Appeals, Division One, held that a juvenile court has the authority to issue a DV no-contact order pursuant to RCW 10.99.050 that remains in effect after the

9

defendant turns 18. It reasoned that because juvenile court is a division of superior court, a superior court can modify or enforce the order even after the juvenile court's jurisdiction ends. *Id.* at 241-42. The court then relied on our decision in *Armendariz* to summarily conclude, without analyzing RCW 10.99.050, that a juvenile court has the authority to issue a no-contact order "for the statutory maximum of the crime." *Id.* at 243.

In *W.S.*, the Court of Appeals' reliance on *Armendariz* was misplaced because that case turned on the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW. The court in *Armendariz* determined that the SRA's statutory scheme and plain language provide trial courts the authority to impose a no-contact order as a crime related prohibition for the statutory maximum term of the offense. 160 Wn.2d at 120. *Armendariz* has no application when determining the duration of a no-contact order issued by a court of limited jurisdiction pursuant to RCW 10.99.050. *W.S.* addresses a separate challenge to juvenile court jurisdiction that is not before this court.

Finally, while the State raises valid concerns regarding the need to protect victims of DV, its public policy argument is inconsistent with the plain language of the statute. The legislature's codified declaration of intent cannot "trump the plain language of the statute." *State v. Reis*, 183 Wn.2d 197, 212, 351 P.3d 127 (2015). If the legislature disagrees with our plain language interpretation, then it may

amend the statute. *Cornelius v. Dep't of Ecology*, 182 Wn.2d 574, 589-90, 344 P.3d 199 (2015).

In sum, a district court's authority is limited to what the legislature has affirmatively granted. RCW 10.99.050 authorizes a district court to issue a no-contact order to record a no-contact condition of the sentence. While the statute is silent regarding the order's duration, its plain language supports the conclusion that a no-contact order issued by a court of limited jurisdiction lasts for the length of the defendant's suspended sentence.

C.     Granath's no-contact order was enforceable until she completed her suspended sentence

Each of Granath's two gross misdemeanor DV crimes carried a maximum jail term of 364 days and a $5,000 fine. RCW 3.66.060. The district court *could have* suspended part of her sentence for five years, imposed a no-contact condition of the sentence, and issued a no-contact order that would have been enforceable for five years. The district court did not do this. Instead, it suspended 334 days of her sentence for 24 months, imposed a no-contact condition of the sentence, and issued a no-contact order purportedly valid for five years.

The no-contact order could not last longer than the no-contact condition of the sentence. Therefore, the district court erred when it refused to vacate the order

11

after Granath completed her suspended sentence in December 2014. We affirm the Court of Appeals.

## CONCLUSION

We affirm the Court of Appeals and hold that RCW 10.99.050 authorizes a district court to issue a DV no-contact order that lasts for the duration of the defendant's suspended sentence. The no-contact order issued in this case was not enforceable after Granath completed her suspended sentence in December 2014, and the district court should have granted her motion to vacate.

_[signature]_ Jr., J.

WE CONCUR:

_[signature]_ Fairhurst, C.J.

_[signature]_ Wiggins, J.

_[signature]_ Johnson, J.

_[signature]_ González, J.

_[signature]_ Madsen, J.

_[signature]_ Gordon McCloud, J.

_[signature]_ Owens, J.

*State v. Granath (Wendy)*
(Stephens, J., dissenting)

No. 94892-5

STEPHENS, J. (dissenting)—I disagree with the majority's narrow view of a district court's authority to enter a domestic violence no-contact order (DVNCO). RCW 10.99.050 authorizes a sentencing court to issue a specialized condition of receiving a suspended or deferred sentence: a stand-alone DVNCO that is enforceable by any court in Washington. Contrary to the majority's reading of RCW 10.99.050, the statute effectively specifies the duration of the stand-alone order by directing that it shall be designated in the DVNCO itself. RCW 10.99.050(3). Accordingly, a DVNCO does not tacitly expire with the conclusion of a suspended sentence. The victim is entitled to protection for the full period of time specified in the order, which cannot exceed five years.

I.   A DVNCO Issued under RCW 10.99.050 Stands on Its Own and Is Not Limited to the Length of the Underlying Sentence

A DVNCO can survive independently of the term of probation if the district court retains postconviction jurisdiction over a defendant.   In sentencing misdemeanor violations, the district court may suspend all or part of any sentence and fix conditions of such suspension.   RCW 3.66.067-.068.   When a defendant commits a domestic violence offense, the district court has the ability to retain jurisdiction over a defendant for up to five years after the imposition of the sentence. RCW 3.66.068(1)(a).   District courts possess wide discretion to issue suspended sentences or to impose sentences and conditions with "'carrot-and-stick incentive[s]'" to promote rehabilitation—a central goal of misdemeanor sentencing. *Harris v. Charles*, 171 Wn.2d 455, 459, 465, 256 P.3d 328 (2011) (alteration in original) (quoting *Wahleithner v. Thompson*, 134 Wn. App. 931, 941, 143 P.3d 321 (2006)).   Conditions such as no contact with the victim, engaging in a mental health evaluation, or completing substance abuse treatment serve as reformative incentives in the face of purely punitive punishment—jail time.   However, a court may not impose sentencing conditions unless it suspends jail time. *State v. Gailus*, 136 Wn. App. 191, 201, 147 P.3d 1300 (2006), *overruled on other grounds by State v. Sutherby*, 165 Wn.2d 870, 204 P.3d 916 (2009).

This case concerns the proper interpretation of RCW 10.99.050. Statutory interpretation is a legal question reviewed de novo. *State v. Costich*, 152 Wn.2d 463, 470, 98 P.3d 795 (2004). The court must first look to a statute's plain meaning. Plain meaning may be discerned from all that the legislature has said in the statute *and related statutes* that disclose legislative intent about the provision in question. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). Courts must keep in mind the need to satisfy the intent of the legislature while avoiding absurd results. *In re Det. of Swanson*, 115 Wn.2d 21, 28, 793 P.2d 962, 804 P.2d 1 (1990).

### a. The Plain Language of RCW 10.99.050 Establishes a Stand-Alone Order

While a DVNCO can be issued only when a sentence is suspended or deferred, the order can nonetheless survive for up to five years following a conviction. Chapter 10.99 RCW anticipates that courts may issue no-contact orders at every possible juncture of prosecution. *See* RCW 10.99.040(2)(a) (court may impose a no-contact order before arraignment or trial), (3) (at the time of arraignment, "the court shall determine whether a no-contact order shall be issued or extended"), .050(1) (the court may issue a postconviction no-contact order as a condition of sentence); *State v. Schultz*, 146 Wn.2d 540, 544, 48 P.3d 301 (2002). Victims remain vulnerable throughout their abuser's prosecution and especially when a convicted

-3-

abuser is released from jail or completes active probation. Chapter 10.99 RCW recognizes these victims' reality.

The State and Granath argue over RCW 10.99.050(1)'s use of the phrase "such condition shall be *recorded*" in determining whether the authority to issue a DVNCO under RCW 10.99.050 is tethered to the length of probation. (Emphasis added.) The majority agrees with Granath that "recorded" indicates that a DVNCO is merely "recording" a condition of the sentence, thus there is no authority for the order to last longer than the condition it records. *See* majority at 7. This view fails to read chapter 10.99 RCW as a whole, including its stated purpose.

At each point of prosecution, a corresponding statute under chapter 10.99 RCW grants the judge the authority to "issue" a no-contact order. The verb "issue" connotes authority. *See* RCW 10.99.050(2)(a) ("[w]illful violation of a court order issued under this section"), .040(7) (referring to orders "issued under this chapter"). RCW 10.99.050(1) empowers sentencing courts to issue DVNCOs as long as a DVNCO is recorded as a condition of the sentence. RCW 10.99.050(2)-(3) discuss the parameters for issuing such an order. "Recorded" merely indicates that RCW 10.99.050 can be utilized by a sentencing court. As long as a condition of the sentence that includes the issuance of a DVNCO has been laid out in the judgment and sentence, RCW 10.99.050 may be separately invoked. If a DVNCO were a mere

recording instrument of the no-contact condition in the judgment and sentence, as the majority posits, the creation of RCW 10.99.050 would be unnecessary because the judgment and sentence already orders no contact with the victim.

A DVNCO issued under RCW 10.99.050 does more than record a sentencing condition; it enables a sentencing court to exercise discretion in how to best keep a victim safe from further abuse. The sentencing judge issuing a DVNCO achieves this by outlining specific parameters of how a defendant is to accomplish the rehabilitative portion of his or her sentence in not coming into contact with his or her victim. This structure is illustrated by the fact that a DVNCO contains additional, specific provisions of no-contact that are not included in the judgment and sentence. In Granath's case, she was not ordered merely to have no contact with the victim as indicated on the judgment and sentence, she was specifically ordered by the DVNCO to remain 500 feet away from her victim, not to keep her victim under surveillance, and not to contact her victim through third parties, among other restrictions. Clerk's Papers (CP) at 39. If the DVNCO were purely a recording of the sentencing condition, we would expect it to match the judgment and sentence.

The plain language of RCW 10.99.050 also reveals that a DVNCO is enforceable beyond the duration of a probationary period, reinforcing that the order stands on its own. RCW 10.99.050(2)(a) and RCW 10.99.050(3) are instructive.

RCW 10.99.050(2)(a) states that a "[w]illfull violation of a court order issued under this section is punishable under RCW 26.50.110." Nowhere in RCW 10.99.050 is it stated that a violation of a DVNCO must necessarily result in revocation of a suspended sentence. The only language that RCW 10.99.050 sets out for violating the DVNCO condition of receiving a suspended or deferred sentence is punishment under RCW 26.50.110. It follows that during active probation, a DVNCO may be enforced by both revocation of the suspended or deferred sentence pursuant to the judgment and sentence, and by independent punishment provided by RCW 10.99.050(2)(a). After the term of probation ends, a DVNCO is enforced solely under RCW 26.50.110. This understanding of the statute is consistent with a plain reading of RCW 10.99.050(2)-(3) that lays out the terms for complying with a DVNCO issued under RCW 10.99.050(1).

Further, RCW 10.99.050(3) provides that a sentencing judge must indicate on the order that the district court actively retains jurisdiction over the defendant in enforcing the order. That jurisdiction could operate during probation only or up to five years as part of receiving a suspended or deferred sentence. This reading is compatible with RCW 3.66.068(1)(a), which states that district courts can retain "continuing jurisdiction and authority" over defendants for up to five years to suspend or defer a sentence upon stated terms. Such terms of suspension or

deferment may include the issuance of a stand-alone no-contact order under RCW 10.99.050, as is the case here. Thus, an order issued under RCW 10.99.050 cannot exceed the court's jurisdiction, and Granath's does not.

Pursuant to RCW 10.99.040(2)(c), the legislature tasked the Administrative Office of the Courts (AOC) with developing master pattern forms for all no-contact orders issued under chapter 10.99 RCW. Such no-contact orders issued under chapter 10.99 RCW are to "substantially comply" with the pattern form developed by AOC. *Id.* On Granath's DVNCO, a bold text box indicates that the district court could retain, and did retain, continuing jurisdiction and authority to issue the DVNCO for five years. CP at 39. The pattern form does not limit the DVNCO's duration to the end of the probationary period. While the AOC's interpretation provided in the pattern DVNCO is not binding, it follows from a plain reading of RCW 10.99.050 as providing for a stand-alone no-contact order. Further reinforcing this view, the "conditions" section on Granath's judgment and sentence refers to "the separate No-Contact Order," evidence of the that fact that RCW 10.99.050 orders are in addition to terms of sentencing. CP at 35.

Finally, "closing" a case is not synonymous with "terminat[ing]" a case under the plain language of RCW 10.99.050(4). When Granath "closed" her case on December 8, 2014 by paying the remainder of her fines, the court did not also

"terminate[]" her DVNCO under RCW 10.99.050(4). The specialized condition for receiving a suspended sentence remained in effect for three more years after her case "closed," despite the end of the probation term. Because RCW 10.99.050(4) requires actual "modifi[cation]" or "terminat[ion]" of a DVNCO, not simply assuming a DVNCO is void at the end of a probationary period, this plain language indicates the legislature intended a DVNCO to be issued as a stand-alone order that must also be vacated independent of the probationary period's completion.

### b. *Legislative Purpose: To Protect Victims*

Statutes should be interpreted to further, not frustrate, their intended purpose. *Bostain v. Food Express, Inc.*, 159 Wn.2d 700, 712, 153 P.3d 846 (2007) (citing *Burnside v. Simpson Paper Co.*, 123 Wn.2d 93, 99, 864 P.2d 937 (1994). Chapter 10.99 RCW was enacted for the protection of the victim, not punishment of the abuser. The plain language of RCW 10.99.050 reflects the clear statutory purpose outlined in RCW 10.99.010: "[T]o recognize the importance of domestic violence as a serious crime against society and *to assure the victim of domestic violence the maximum protection from abuse which the law and those who enforce the law can provide.*" (Emphasis added.) Recognizing a DVNCO lasts for the maximum term of authority a sentencing judge has to impose sentencing conditions under RCW 3.66.068 provides "maximum protection from abuse" for victims, without further

punishing the defendant. Keeping a convicted domestic abuser away from his or her victim is not punishment; it is deserved protection for the domestic violence survivor. That it may also require the abuser to exercise rehabilitative self-control around those who do not desire unwanted contact does not alter its purpose. Thus, while RCW 3.66.068 concerns punishment, RCW 10.99.050 concerns protection without overstepping the jurisdictional limits provided by RCW 3.66.068. This relationship between the two statutes is consistent with the legislative purpose set out in RCW 10.99.010—protection of victims.

I am concerned that the majority's interpretation of RCW 10.99.050 will undermine the protective purpose of chapter 10.99 RCW. A copy of the DVNCO is provided to both the victim and law enforcement. RCW 10.99.050(1), (3). RCW 10.99.050(3) instructs that the DVNCO shall be entered for "one year or until the expiration date specified on the order." If DVNCOs that specify a duration longer than the length of probation become automatically void after probation *without further court action*, as the majority advances, how is law enforcement and, most importantly, the victim to know of the abuser's lawful ability to contact the victim? *See* majority at 8-10 (stating that the State's "public policy argument is inconsistent with the plain language of the statute"). We should not interpret chapter 10.99 RCW

to create such a risk of confusion—and harm. Such an interpretation goes against the legislative purpose to protect victims' safety.

Discerning RCW 10.99.050's plain meaning requires this court to examine not only RCW 10.99.050 but also related statutes, with an eye toward finding a harmonious statutory scheme. *State v. Bigsby*, 189 Wn.2d 210, 216, 399 P.3d 540 (2017). The majority references related statutes, but fails to fully appreciate and analyze their interlaced relationship to RCW 10.99.050. *See* majority at 5, 7. Two related statutes concerning the same subject matter—a sentencing court's authority to protect victims—illuminate the fact that DVNCOs are imposed as stand-alone orders. RCW 7.90.150(6)(a) (sexual assault postconviction orders) and RCW 7.92.160(6)(a) (stalking postconviction orders) share the same enabling language as RCW 10.99.050(1) for a sentencing court to issue a specialized no-contact order: "When a defendant is found guilty of [the relevant type of crime] and a condition of the sentence restricts the defendant's ability to have contact with the victim, such condition shall be recorded . . . ." The only difference between these victim-protecting statutes and RCW 10.99.050 is that duration of the order is explicitly stated in the statute.[1] However, these other specialized orders were intended to be

---

[1] *See* RCW 7.92.160(6)(c) ("A final stalking no-contact order entered in conjunction with a criminal prosecution shall remain in effect for a period of five years from the date of entry."); RCW 7.90.150(6)(c) ("A final sexual assault protection order entered in conjunction with a criminal prosecution shall remain in effect for a period of two years

issued only if a victim could not qualify for a DVNCO.[2] In addition, RCW 7.90.150 was designed to mirror domestic violence protections issued under RCW 10.99.050.[3] Given this statutory scheme, it makes little sense that the legislature intended to afford sexual assault and stalking victims protection even after a defendant has completed probation, but denied similar protection to domestic violence victims.

In sum, I would hold that the plain language of RCW 10.99.050 establishes that a DVNCO is issued as a stand-alone order at the time of sentencing and is not dependent on the length of probation.

II. Duration of the DVNCO Is Found on the Face of the Order

Although a sentence may be suspended for less than five years, that does not mean a DVNCO issued as part of the sentence, generally, must match the length of the imposed suspended sentence. Contrary to the majority's interpretation,

---

following the expiration of any sentence of imprisonment and subsequent period of community supervision, conditional release, probation, or parole.").

[2] *See* RCW 7.90.005 ("It is the intent of the legislature that the sexual assault protection order created by this chapter be a remedy for victims who do not qualify for a domestic violence order of protection."); RCW 7.92.010 ("Victims of stalking conduct deserve the same protection and access to the court system as victims of domestic violence and sexual assault . . . . The legislature finds that preventing the issuance of conflicting orders is in the interest of both petitioners and respondents.").

[3] HOUSE JUDICIARY COMM., H.B. ANALYSIS ON H.B. 2576, at 3, 59th Leg., Reg. Sess. (Wash. 2006) ("Violations of a SAPO [sexual assault protection order] have the same penalties as violations of domestic violence protection orders."); SENATE COMM. ON JUDICIARY, S.B. REP. ON S.B. 6478, at 2-3, 56th Leg., Reg. Sess. (Wash. 2006) ("[A sexual assault victim] should be able to get the same protections as a domestic violence victim. . . . This legislation is meant to mirror domestic violence protection orders.").

durational language is indicated in RCW 10.99.050(3)—by reference to the expiration date specified on the order. The majority reads "expiration date specified on the order" to be synonymous with "expiration date of the suspended or deferred sentence." *See* majority at 5-6. This is not the plain language of the statute. For Granath's convictions, the district court imposed 364 days in jail with 334 days suspended for 24 months on various conditions, including the issuance of a separate no-contact order. CP at 35-37. On its face, the order stated, "This no-contact order expires on: _____. Five years from today if no date is entered." CP at 39. No date was written in the blank. *Id.* Consistent with the plain reading of RCW 10.66.068, the district court lawfully retained jurisdiction over Granath by issuing a DVNCO for a period of five years as a condition of receiving a suspended sentence and specified this duration on the face of the DCNVO.

The scheme of issuing a DVNCO for a greater length than the probationary period reinforces the sentencing court's wide discretion in determining what kind of sentence best rehabilitates a domestic violence offender. A sentencing court may decide that active probation is not necessary after two years, but this does not mean the victim's protection must end. RCW 26.50.110 may act as an incentive for offenders to remain in compliance with a DVNCO without the added cost of probation and active monitoring. RCW 10.99.050(2)(a). For this to happen, RCW

-12-

10.99.050 ensures a DVNCO does not expire the moment a person is released or completes her term of probation. The legislature articulated that the response to domestic violence is "the enforcement of the laws to protect the victim and [to] communicate the attitude that violent behavior is not excused or tolerated." RCW 10.99.010. A protection order that lasts beyond probation serves this purpose without further punishing the defendant. It is properly understood as a stand-alone order.

## CONCLUSION

A DVNCO's purpose is clear: to protect survivors of domestic violence from further harm. To effectuate this purpose, RCW 10.99.050 authorizes a sentencing judge to issue a stand-alone no-contact order and to impose it for the duration stated on the order, not to exceed five years. I would reverse the Court of Appeals decision and reinstate the district court's denial of Granath's motion to vacate the no-contact order.